CONNOLLY BOVE LODGE & HUTZ LLP
Karen C. Bifferato, Esq.
Christina M. Thompson, Esq.
Kelly M. Conlan, Esq.
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-3080
kbifferato@cblh.com
cthompson@cblh.com
kconlan@cblh.com

*Attorneys for Inland US Management, LLC*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: Oct. 8, 2009<br>Hearing Time: 10:00 a.m. |

| | |
|---|---|
| In re:<br><br>BACHRACH ACQUISITION, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 09-12918 (SMB) |

**MOTION OF INLAND US MANAGEMENT, LLC
TO COMPEL IMMEDIATE COMPLIANCE WITH
POST-PETITION LEASE OBLIGATIONS PURSUANT TO
11 U.S.C. § 365(d)(3) AND TO COMPEL IMMEDIATE REJECTION
OF THE LEASE AND SURRENDER OF THE PREMISES**

Inland US Management, LLC ("Inland"), by and through its undersigned counsel, hereby moves for the entry of an order in the form attached hereto compelling the above-captioned debtor ("Debtor") to immediately satisfy its obligations as set forth in the Lease (as defined below), as modified by the Lease Extension Agreement (as defined below), and to compel immediate rejection of the Lease and surrender of the Premises (as defined below). In support of this Motion, Inland respectfully states as follows:

## BACKGROUND

1. On May 6, 2009 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

2. The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. Prior to the Petition Date, Inland, as the managing agent for a landlord, and the Debtor, as tenant, entered into that certain unexpired lease ("Lease") of nonresidential real property for premises located at the Centre at Naperville, in Naperville, Illinois ("Premises"). The original term of the Lease was set to expire on July 14, 2009.

4. However, at the Debtor's request, instead of allowing the Lease to expire, Inland and the Debtor entered into an agreement to extend and modify certain terms of the Lease ("Lease Extension Agreement"), which was approved by the Court on August 21, 2009 (D.I. 169) ("Order"). A copy of the Lease Extension Agreement is attached hereto as Exhibit A. A copy of the Order is attached hereto as Exhibit B. Pursuant to the Lease Extension Agreement, the term of the Lease would be extended through and including September 30, 2009, and thereafter on a month to month basis, terminable by either party on thirty (30) days' notice.

5. Pursuant to the Lease Extension Agreement, the Debtor is required to pay monthly rent for the Premises in an amount equal to the greater of (i) thirty thousand dollars ($30,000.00) ("Minimum Guaranteed Monthly Rent"), or (ii) percentage rent ("Percentage Rent") in the amount of fifteen percent (15%) of the Debtor's gross sales from the Premises for the preceding calendar month ("Reporting Month"), with the first

Reporting Month being August, 2009, as well as including the partial month commencing on July 15, 2009, and ending July 31, 2009. *See* Lease Extension Agreement, ¶ 2.

6. The Lease Extension Agreement also requires the Debtor to pay the Minimum Guaranteed Monthly Rent in advance, on or before the first day of each Reporting Month. Additionally, on or before the date that is fifteen (15) days following the end of each Reporting Month, the Debtor is required to submit to Inland a report of the Debtor's gross sales for the immediately proceeding Reporting Month, together with a sum equal to the Percentage Rent for the Reporting Month less the actual Minimum Guaranteed Monthly Rent paid by the Debtor for the applicable Reporting Month. *See* Lease Extension Agreement, ¶ 2.

7. In addition, the Lease Extension Agreement requires the Debtor to pay to Inland all sums necessary to satisfy various mechanics' liens filed against the Premises. *See* Lease Extension Agreement, ¶ 5. Also, within five (5) days of the entry of the Order, the Debtor is required to (i) pay to Inland all Nicor Gas charges accruing against the Premises from and after the Petition Date; (ii) pay to the City of Naperville, and provide evidence of such payment to Inland, all water and electric charges accruing against the Premises from and after the Petition Date; and (iii) in consultation with Nicor Gas, place gas services for the Premises in the Debtor's name and provide evidence of such transfer to Inland. *See* Lease Extension Agreement, ¶ 4. Lastly, the Debtor must fully comply with and/or enforce the *Final Order Granting the Motion (i) Approving the Debtor's Proposed Form of Adequate Assurance Payment, and (ii) Prohibiting Utilities from Altering, Refusing or Discontinuing Utility Services* (D.I. 88), with respect to any amounts owed to the City of Naperville for water and electric services to the Premises

prior to the Petition Date. *See* Lease Extension Agreement, ¶ 4.

8. To date, the Debtor has failed to comply with most of its obligations set forth in paragraphs 5-7 above (collectively, "Obligations"), as required by the Lease Extension Agreement and the Order and as more fully described herein.

**RELIEF REQUESTED**

9. Inland respectfully requests that the Court enter an order that compels the Debtor to immediately comply with its Obligations under the Lease as modified by the Lease Extension Agreement, that compels the immediate rejection of the Lease and surrender of the Premises, and that awards Inland its attorneys' fees and costs.

A. *The Debtor Should Be Required to Immediately Comply with Its Obligations Under the Lease, as Modified by the Lease Extension Agreement, Pursuant to Section 365(d)(3) of the Bankruptcy Code.*

10. Section 365(d)(3) of the Bankruptcy Code requires the Debtor to "timely perform all the obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected . . . ." 11 U.S.C. § 365(d)(3). Section 365 of the Bankruptcy Code is unequivocal: it says that a debtor "shall" timely perform. 11 U.S.C. § 365(d)(3) (emphasis added). Courts have continually held that a landlord is entitled to immediate payment of post-petition, pre-rejection rental payments, pursuant to 11 U.S.C. § 365(d)(3). *See, e.g., In re Valley Media, Inc.*, 290 B.R. 73, 77 (Bankr. D. Del. 2003). When obligations arise including, but not limited to, payments that become due, under a non-residential real property lease during the post-petition period, the debtor is required to timely and fully comply with those obligations when they become due. *See In re Pudgie's Dev. of NY, Inc.*, 239 B.R. 688, 693 (S.D.N.Y. 1999) ("The plain meaning of § 365(d)(3) requires that the landlord

4

obtain payment as lease obligations come due.")

11. The Debtor has failed to comply with practically all of its Obligations as they have come due under the Lease, as modified by the Lease Extension Agreement. First, the Debtor has not met its payment Obligations under the Lease or the Lease Extension Agreement. According to Inland's records, and pursuant to the Debtor's own admissions, the Debtor still owes Inland at least $1,032.82 for amounts due under the Lease prior to July 14, 2009.

12. The Debtor has also failed to meet its payment Obligations under the Lease Extension Agreement on a consistent basis. Even though the Lease Extension Agreement has been effective for some time, the Debtor has continued to make payments late, and as though the payment terms under the Lease are still in effect. For example, at the end of August, the Debtor finally paid Inland $24,599 relating to July sales at the Premises. Presumably, half of this amount ($12,300) related to sales for the second half of July, 2009, which is a period covered by the Lease Extension Agreement. Instead, under the Lease and the Lease Extension Agreement, by July 25, 2009, the Debtor should have paid Inland $12,300 for the period July 1, 2009 to July 14, 2009, and the Debtor should have made its first Minimum Guaranteed Monthly Rent payment in the amount of $45,000[1] after the Order was entered. Inland still does not know how much 15% of the Debtor's sales for the period July 15, 2009 to July 31, 2009 equals, despite repeated requests for such information, in order to deduct it from the $12,300 the Debtor paid for this period. Accordingly, the Debtor may owe Inland additional rent for the 15% from sales that it owes for the period July 15, 2009 to July 31, 2009.

---

[1] Comprised of $15,000 Minimum Guaranteed Monthly Rent for 7/15/09 to 7/31/09, and $30,000 Minimum Guaranteed Monthly Rent for 8/1/09 to 8/31/09.

5

13. Next, although Inland should have been paid $30,000 for advance Minimum Guaranteed Monthly Rent for August, 2009, which should have then been reconciled by September 15, 2009, instead, on or about September 14, 2009, the Debtor simply paid Inland $46,643.84, stating that such figure was 15% of August sales at the Premises. Although this payment was made late and the Minimum Guaranteed Monthly Rent for August was never paid by the Debtor, Inland has no reason to dispute this payment at this point in time.

14. However, the Debtor has failed to pay Inland the $30,000 in Minimum Guaranteed Monthly Rent that was due under the Lease Extension Agreement on September 1, 2009, despite repeated requests for this amount. In addition, the Debtor will owe Inland another $30,000 in Minimum Guaranteed Monthly Rent on October 1, 2009. The Debtor may also owe Inland additional amounts, depending on reconciliations that must be performed under the Lease Extension Agreement by October 15, 2009 and November 15, 2009, respectively.

15. In total, the Debtor currently owes Inland at least $31,032.82,[2] plus any additional amounts owed for 15% of sales during the period July 15, 2009 to July 31, 2009, as well as an additional $30,000 due by October 1, 2009, which is before the date on which this Motion will be heard by the Court.

16. Next, the Debtor was required and has failed to provide to Inland by August 28, 2009[3] evidence that the Debtor had satisfied its Obligations with respect to Nicor Gas and the City of Naperville, and payment for all of the mechanics' liens on the Premises. *See* Lease Extension Agreement, ¶¶ 4-5. To date, the Debtor has not provided

---

[2] Comprised of $1,032.82 for amounts owed prior to July 14, 2009, and $30,000 owed for Minimum Guaranteed Monthly Rent due on 9/1/09 for September, 2009.
[3] This is five (5) days after entry of the Order approving the Lease Extension Agreement.

6

Inland with evidence that these Obligations have been satisfied, nor has the Debtor paid Inland for the liens, despite repeated demands of the Debtor to do so. In fact, with respect to the Debtor's Obligation to pay to the City of Naperville all water and electric charges accruing against the Premises from and after the Petition Date, Inland recently received a statement from the City of Naperville stating its delinquency had increased from approximately $1,000.00 to $3,051.33. Thus, not only has the Debtor *not* paid the original delinquency of approximately $1,000.00 as required by the Lease Extension Agreement, the Debtor has also failed to pay the additional invoices that have come due.

17. Thus, the Debtor should be compelled to immediately comply with its Obligations under the Lease as set forth in the Lease Extension Agreement and as described more fully above pursuant to 11 U.S.C. § 365(d)(3). In addition, the Debtor should be immediately compelled to pay to Inland the $30,000 owed for the Minimum Guaranteed Monthly Rent on October 1, 2009, since this Motion will not have been heard before such date.

**B.** *The Debtor Should be Compelled to Immediately Reject the Lease and Surrender Possession of the Premises to Inland Pursuant to Section 365(d) of the Bankruptcy Code.*

18. In addition, the Debtor should be compelled to immediately reject the Lease and surrender possession of the Premises to Inland pursuant to section 365(d) of the Bankruptcy Code. The Debtor's constant failure to timely perform its obligations under the Lease, the Lease Extension Agreement, and the Order approving the Lease Extension Agreement is more than enough cause for this Court to compel the Debtor to immediately reject the Lease and surrender the Premises to Inland, particularly in light of

the fact that Inland will soon be able to terminate the Lease on thirty (30) days' notice.[4] Accordingly, the Lease should be deemed rejected and the Debtor should be compelled to immediately surrender possession of the Premises to Inland.

19. Lastly, paragraph 17 of the Lease provides that "Tenant agrees to reimburse Landlord for any attorney's fees and other costs and expenses of any kind incurred by Landlord in exercising any rights of Landlord or enforcing any remedies of Landlord under this Lease." *See* Lease, ¶ 17. Thus, Inland is entitled to recover attorneys' fees and costs it has incurred in its efforts to enforce the terms of the Lease and the Lease Extension Agreement, which includes all fees and costs incurred in connection with filing this Motion, as well as all fees and costs incurred associated with Inland's many attempts to get the Debtor to fulfill its obligations. *See Urban Retail Props. v. Loews Cineplex Entertainment Corp.*, 2002 WL 535479, * 9 (S.D.N.Y. Apr. 9, 2002) ("Recovery of attorneys fees . . . is appropriate where the lease at issue provides for such recovery as an obligation of the Debtor."). Should the Court grant Inland's request for attorney's fees and costs, Inland can provide an itemized statement of all such fees and costs if the Court so requires.

---

[4] As the Lease Extension Agreement was executed following the Petition Date, Inland does not believe it is required to seek relief from the automatic stay of section 362 of the Bankruptcy Code in order to provide notice to the Debtor that it is terminating the Lease. However, out of an abundance of caution, Inland hereby requests relief from the automatic stay so that it can provide the notice necessary to terminate the Lease and take all other action required by applicable non-bankruptcy law to remove the Debtor from the Premises.

WHEREFORE, Inland respectfully requests that the Court enter an order that grants Inland the relief that is requested herein and grants such further and additional relief as the Court may deem just and proper.

Dated: September 24, 2009　　　　CONNOLLY BOVE LODGE & HUTZ LLP

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Karen C. Bifferato (No. 3279)
　　　　　　　　　　　　　　　　　Christina M. Thompson (No. 3976)
　　　　　　　　　　　　　　　　　Kelly M. Conlan (No. 4786)
　　　　　　　　　　　　　　　　　The Nemours Building
　　　　　　　　　　　　　　　　　1007 N. Orange Street
　　　　　　　　　　　　　　　　　P.O. Box 2207
　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　(302) 658-9141

　　　　　　　　　　　　　　　　　*Attorneys for Inland US Management, LLC*

#717811