PLATZER, SWERGOLD, KARLIN,
LEVINE, GOLDBERG & JASLOW, LLP
Attorneys for the Debtor
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Telephone: (212) 593-3000
Facsimile: (212) 593-0353
Henry G. Swergold, Esq.
Clifford A. Katz, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

In re:                                                    CHAPTER 11

BACHRACH ACQUISITION, LLC,                                Case No. 09-12918 (SMB)

              Debtor.
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

**DEBTOR'S APPLICATION PURSUANT TO SECTIONS 105(a), 363 AND 365
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004, AND 6006
FOR (I) ENTRY OF AN ORDER (A)ESTABLISHING BIDDING PROCEDURES FOR
THE SALE OF ASSETS, (B) APPROVING CERTAIN BID PROTECTIONS, (C)
SCHEDULING AN AUCTION AND SALE HEARING, AND (D) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER AUTHORIZING
AND APPROVING (A) THE DEBTOR'S ENTRY INTO A CERNTAIN ASSET
PURCHASE AGREEMENT, (B) THE SALE OF ASSETS FREE AND CLEAR OF LIENS
AND OTHER INTERESTS, AND (C) ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND LEASES**

        Bachrach Acquisition, LLC , debtor and debtor in possession, (the "Debtor") as and for

its application (the "Application"), pursuant to sections 105(a), 363 and 365 of title 11 of the

United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and  6006 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United

States Bankruptcy Court for the Southern District of New York, seeking the entry of an order, (i)

establishing and approving the bid procedures in connection with the sale of all or substantially

all of the Debtor's assets and (ii) setting the related auction and hearing dates for the sale of all or

substantially all of the Debtor's assets, (iii) approving the sale of the Debtor's assets, (iv)

1

granting certain bid protection, and (v) approving the assumption and assignment of certain executory contracts and leases, and such other relief as may be requested in this Application. In support thererof the Debtor respectfully represents:


## PRELIMINARY STATEMENT
## STATUS OF THE CASE AND JURISDICTION

1.     On May 6, 2009 (the "Petition Date"), the Debtor commenced its chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under the Bankruptcy Code.

2.     The Debtor has continued in possession of its property and has continued to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case. An Official Committee of Unsecured Creditors (the "Committee") has been appointed in this proceeding. The Committee has retained the law firm of Kelley Drye & Warren as its counsel.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules, 2002, 6004 and 6006.

## BACKGROUND

5.     The Debtor is a specialty retailer of men's clothing and accessories as of the Petition Date operated forty-nine (49) stores located in Illinois, Indiana, Michigan,

Virginia, Texas, Tennessee, Wisconsin, Pennsylvania, Georgia, Oklahoma, Kansas, Maryland, New Jersey, New York and Missouri, maintained a corporate office in New York, and an office and distribution center in Illinois. Subsequent to the Petition Date the Debtor closed approximately 32 stores and moved its corporate office and distribution center in an attempt to restructure its business.

6.          Pursuant to prior Order of this Court dated June 17, 2009 [Docket # 109] the Debtor retained Hilco Trading LLC  as liquidating agent and was authorized and did conduct certain going out of business sales in approximately 30 unprofitable store locations throughout the United States.

7.          The circumstances leading to the Debtor's filing of this Petition under chapter 11 of the Bankruptcy Code was precipitated by the substantial loss of sales due to the nation's broad economic downturn and the Debtor's inability to purchase new inventory due to a reduction of the Debtor's line of credit. Prior to the Petition Date, the Debtor engaged in several transactions to enhance liquidity, restructure its operations and effect changes to its equity structure to gain additional capital. However, despite these and other efforts to complete a successful turnaround, the Debtor, like other retailers in this difficult economic environment, continued to experience significant losses and decreased sales. After considering its alternatives in order to preserve and maximize the value of its assets for the benefit of all stakeholders, the Debtor determined to institute this chapter 11 proceeding.

8.          Prior to and since the Petition Date, the Debtor has undertaken an extensive evaluation of its business. As part of the Debtor's efforts, the Debtor closed certain locations, conducted a going out of business sale, explored, among other options, obtaining an

additional equity investment, tried to obtain additional debt financing and subsequently negotiated with several entities toward the purchase of its remaining assets and store locations.

9.	As of the date of this Application, the Debtor continues to operate seventeen (17) stores in ten (10) states and its corporate office in New York City.

10.	Due to the continued weak retail market and the Debtor's continued liquidity constraints the Debtor determined that its only viable alternative is to facilitate the sale of its business assets. The Debtor must act quickly and efficiently to hold an auction for the sale of the Debtor's' business, and by doing so, preserve the value of its assets and maximize the value of its estate. Consequently, the Debtor requests that the Court approve the expedited sale process described herein. Prior to the filing of this Application the Debtor again marketed its assets to several potential strategic and financial buyers and established an electronic data room for those interested parties to review the Debtor's financial books and records.

11.	By this Application the Debtor seeks this Court's approval of the proposed bidding procedures as annexed hereto as Exhibit "B" pursuant to which the Debtor will conduct an auction for all or substantially all of its assets. The Debtor has not limited the type of bids to be considered.

12.	The prompt sale of the Debtor's assets pursuant to the procedures and on the timeline set forth herein presents the best opportunity to maximize the value of the Debtor's assets for the benefit of all stakeholders. The Debtor believes that, absent a prompt sale, the value of its assets will rapidly decline because the Debtor lacks sufficient funding to continue operations, including for the purchase of new inventory.

## **RELIEF REQUESTED**

13.	By this Application, the Debtor seeks entry of two orders:

(i)      The Debtor requests entry of an order, on an expedited basis, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Bidding Procedures Order</u>"), (A) approving procedures (the "<u>Bidding Procedures</u>," the form of which is attached hereto as <u>Exhibit B</u>) for (i) submitting bids for any or all of the Debtor's assets or business, (ii) conducting an auction (the "<u>Auction</u>") with respect to any assets or businesses on which the Debtor receives more than one bid[1]; and (B) scheduling the Auction and a hearing to approve any such sale (the "<u>Sale Approval Hearing</u>") with respect to any bid(s) accepted by the Debtor.

(ii)      At the Sale Approval Hearing, the Debtor will requests entry of an order, pursuant to sections 105(a), 363(b), (f), and (m) and 365 of the Bankruptcy Code, approving (A) the sale of substantially all of its assets to B & B Bacharach LLC("Purchaser") upon the terms of the Asset Purchase Agreement, subject to higher and better bids pursuant to a Sale Order (as define below) A copy of the proposed Sale Order is attached hereto as Exhibit D.

## Assets to be Sold

14.             The Debtor is offering for sale substantially all of its assets (the "<u>Assets</u>"). As provided in the Asset Purchase Agreement, (the "APA") (which shall be substantially in the form as annexed hereto as Exhibit "C") between Purchaser[2] and the Debtor, with respect to the sale of such Assets, all of the Debtor's rights, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and against, in accordance with section 363 of the Bankruptcy Code. The Assets to be sold include any and all actions which may exist pursuant to Chapter 5 of the Bankruptcy Code.  The Purchaser believes that, among other things, the commencement of litigation against the Debtor's vendors arising out of the Debtor's payment of those vendors prior to the Petition Date would be significantly detrimental to the business being acquired going forward.  Additionally, based upon the Debtor's review of its books and records,

---

[1] The Debtor has received a bid to purchase all of its assets from B & B Bacharach LLC, a California Limited Liability Company and seeks to have this bid approved, subject to higher and better bids.
[2] Unless otherwise defined herein or in the Bankruptcy Code, capitalized terms shall have the meanings as defined in the Asset Purchase Agreement.

and the timing of the payments made to insiders during the preference period, the Debtor does not believe that any Chapter 5 actions exist against insiders.  However to the extent that such actions do exist, the Purchaser has indicated that it is unwilling to go forward with the APA with the potential of litigation being commenced against those insiders who have invested funds in the Purchaser which was required in order to capitalize the Purchaser and pay the Purchase Price.

15.   The Purchaser is a California limited liability company formed for the purpose of this sale,consisting of two (2) members. The first member is an entity controlled by Mr. Brian Park, an individual who has no interest in the Debtor but is associated with the Michael Brandon Company, one of the Debtor's suppliers.  Mr. Park, through a company designated by him will hold a seventy-five percent (75%) interest in the Purchaser. The second member is an entity holding twenty-five percent (25%) interest in the Purchaser consisting of several members who are currently also members of the Debtor. Mr. Brian Lipman who currently serves as president will hold an interest in the minority member of the Purchaser.

**Proposed Notice, Bidding and Auction Procedures**

**I.**   **Notice and Other Procedures**

16.   The Debtor requests approval of the following notice and other procedures:

(a)  <u>Sale Notice:</u> As soon as practicable following Bankruptcy Court approval of the Bid Procedures, the Debtor will serve notice of the Auction and Sale Approval Hearing (the <u>"Sale Notice"</u>) by e-mail, facsimile, overnight and/or first class mail, on: (i) counsel to the Official Creditor's Committee; (ii) the Office of the United States Trustee for the Southern District of New York (the <u>"U.S. Trustee");</u> (iii) counsel to Wells Fargo Business Credit, (iv) all known creditors of the Debtor, including those creditors holding the twenty (20) largest

unsecured claims against the Debtor's estate; (v) all current landlords of the Debtor and parties to any executory contracts which the Purchaser request to be assumed and assigned, (vi) entities that are known to the Debtor to have previously expressed an interest in the Assets, (vii) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Assets offered for sale; and (viii) all affected federal, state and local taxing authorities, including the Internal Revenue Service; (collectively, the "Sale Notice Parties"). The form of Sale Notice is attached hereto as Exhibit E.

(b)     Bid Deadline; Date, Time, and Place of Auction: The Debtor requests that bidders be required to submit bids (in the form and manner described herein and in the Bid Procedures) and that the Bankruptcy Court schedule the deadline to submit bids to be on or before **February 18, 2010 at 5:00 pm (prevailing Eastern Time)** (the "Bid Deadline"). The Debtor proposes that Bankruptcy Court schedule the Auction, if necessary, be conducted at the offices of Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, 1065 Avenue of the Americas, New York, New York, 10018 commencing on **February 22, 2010 at 10:00 a.m. (prevailing Eastern Time).** The Debtor's Assets may be sold in a single sale to a single bidder or in parts to different bidders. The Debtor will select the highest or best bid(s) after consultation with the Committee and Wells Fargo, and the successful bidder(s) (the "Successful Bidder") will be required to enter into a definitive agreement(s), which shall be subject to the approval of the Bankruptcy Court at the Sale Approval Hearing. The Auction may be adjourned without further notice by announcement at the Auction. If there are no qualified bids, other than the Purchaser, the Auction shall be cancelled and the Debtor will seek approval of a sale of Assets to Purchaser pursuant to the APA at the Sale Hearing.

(c)     <u>Date, Time, and Place of the Sale Approval Hearing:</u> The Debtor proposes

that the Bankruptcy Court schedule the Sale Approval Hearing to be held in the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, **on February 23, 2010 at 10:00 a.m. (prevailing Eastern Time).** The Sale

Approval Hearing may be adjourned, from time to time, without further notice to creditors or

parties in interest other than by announcement of the adjournment in open court or on the Court's

docket.

(d)     <u>Objection Deadline to Sale Order(s):</u> The Debtor also requests that the

Bankruptcy Court require objections to the relief sought in the Sale Order to be in writing, filed,

and served so as to be <u>actually</u> <u>received</u> by: (i) counsel to the Debtor, Platzer, Swergold, Karlin,

Levine, Goldberg & Jaslow, LLP 1065 Avenue of the America, New York, New York 10018,

Attn: Henry Swergold Esq. or Clifford Katz Esq., (ii) the U.S. Trustee,  33 Whitehall Street, 21st

Floor, New York, New York 10004, Attn: Serene K. Nakano, Esq.,  (iii) counsel to Wells Fargo

Business Credit Operating Division , as the Post-Petition Lender, Ruskin, Moscou, Faltischek,

P.C. , East Tower, 15th Floor, 1424 RXR Plaza, Uniondale, NY 11556-1425, Attn: Jeff Wurst,

Esq.; and (iv) counsel to the Creditors' Committee, Kelly Drye & Warren LLP 101 Park Avenue

New York, New York  10178,Attn: Robert Lehane, Esq, (collectively, the <u>"Objection Notice</u>

<u>Parties"),</u> **by February 18, 2010 at 5 p.m. (prevailing Eastern Time)**[3] or as otherwise directed

by the Court.

(e)     <u>Information Provided to Interested Parties:</u> The Debtor either provided or

will provide to all parties that have either expressed an interest in purchasing the Assets or who

---

[3] To the extent any objections are with respect to the conduct at the Auction, such objections may be heard at the
Sale Approval Hearing.

the Debtor believes may have an interest in purchasing the Assets (each an "Interested Party" and, collectively, the "Interested Parties"), certain information in connection with the proposed Sale, including, among other things, the Sale Notice and the proposed Bidding Procedures. Should any Interested Party desire additional or further information, such Interested Party will be required to enter into a confidentiality agreement satisfactory to the Debtor in its business judgment. Upon execution of the confidentiality agreement, the Interested Party will be given access to various financial data and other relevant and confidential information as may be requested in order to determine its interest in submitting a bid.

(f)     Good Faith Deposit: Bidders will be required to submit good faith deposits (the "Good Faith Deposits") with the Debtor on or before the Bid Deadline. Such Good Faith Deposits shall be equal to ten percent (10%) of the purchase price of such bid. Good Faith Deposits of all bidders (except for the Successful Bidder) shall be held by Debtor's counsel in a separate interest-bearing account for the Debtor's benefit until eleven (11) business days following the Sale Approval Hearing. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Debtor without affecting or reducing any of the Debtor's other rights or claims against such party and the next highest bid received for assets will be deemed to be the Successful Bidder.

(g)     Adequate Assurance: For any bid submitted in accordance with the Bidding Procedures (as further defined therein, a "Qualified Bid") that requires the assumption and assignment of executory contracts (the "Contracts") or unexpired leases (the "Leases"), the bidder must identify such Contracts and/or Leases to be assumed and assigned and provide

evidence of its ability to provide adequate assurance of future performance of such Contracts or Leases along with the Qualified Bid.

(h)     Qualified Bidder: The Debtor, in consultation with Wells Fargo and the Committee, shall determine if a particular bid received for the Assets is a Qualified Bid. However, in order to be a Qualified Bidder, the bid submitted must: (i) be accompanied by a Good Faith Deposit, (ii) be irrevocable, (iii) be accompanied by a marked up version of the APA, (iii) not be subject to further due diligence, and (iv) not be subject to any financing contingency.

(i)     Backup Bidder:  If for any reason the entity or entities that submit(s) the highest or otherwise best bid(s) fails to consummate the purchase of the Assets, or any part thereof, the bidder of the second highest or best bid shall remain bound by such bid and will automatically be deemed to have submitted the highest or best bid and to the extent the Debtor consents, the Debtor and such bidder are authorized to effect the Sale of the Assets, or any part thereof, to such bidder(s) as soon as reasonably practicable. If such failure to consummate the purchase is the result of a breach by the winning bidder, the Debtor reserves the right to seek all available damages from said bidder.

## II.     **The Bidding Procedures**

17.             The Debtor intends to implement the Bidding Procedures attached hereto as Exhibit B, pursuant to which any person or entity wanting to participate in the Auction must submit a Qualified Bid by the Bid Deadline.

18.             The Debtor reserves the right to modify such procedures as necessary or as it deems appropriate, in consultation with Wells Fargo and the Committee, to maximize value for the Debtor's estate and creditors. In addition, the Debtor reserves its right to withdraw

any or all assets or business from the sale at any time prior to the Court's approval of such sale. The Debtor believes that the Bidding Procedures are appropriate and will maximize the recovery for the Debtor and its estate in connection with the Sale in consultation with Wells Fargo and the Committee.

19.            The Debtor further believes that these Bidding Procedures provide an appropriate framework for selling the Assets in a uniform fashion and will enable the Debtor to review, analyze, and compare all bids received to determine which bid(s) are in the best interests of the Debtor and its estate and creditors.

20.            Notwithstanding any confidentiality agreement that may be contained in any agreement, contract, or other document to which the Debtor is a party, the Debtor is authorized to disclose the contents of such agreement, contract, or document to prospective bidders in connection with the Bidding Procedures and proposed Sale and such disclosure shall not be a breach of any such contract, agreement or document.

## III.   The Auction

21.            The Debtor proposes that on **February 22, 2010 at 10:00 a.m. (prevailing Eastern Time),** it will commence the Auction to sell all or substantially all of its assets. Any bidder who submits a Qualified Bid[4] (as defined in the Bidding Procedures) may participate in the Auction.

22.            Bidding will continue with respect to the Auction until the Debtor determines that it has received the highest or otherwise best bid(s) for the Assets after consultation with Wells Fargo and the Committee. After the Debtor so determines, it will close the Auction, subject, however, to their right to re-open the Auction if necessary. The Debtor, after consultation with Wells Fargo and the Committee, will then determine and announce which

sale or combination of sales has been determined to be the highest or otherwise best bid(s) (the "Successful Bid").

IV.    **The APA**

23.         The Debtor seeks to sell its Assets to Purchaser or to such Qualified Bidder as determined at the Auction to be the highest and best pursuant to the terms of the APA. A copy of the proposed APA is annexed hereto and incorporated herein as Exhibit "C". The Debtor proposes to use this APA upon substantially the same form to solicit bids for the Sale of Assets. The use of the form APA will enable the Debtor and other parties in interest to easily compare and contrast the differing terms of any bids that may be received prior to or at the Auction. The Debtor has the right not to consider any bid that does not substantially conform to the APA.

**APPLICABLE AUTHORITY**

I.    **A Sale of The Debtors' Assets Under
      Section 363 of the Bankruptcy Code is Warranted**

24.         Ample authority exists for the approval of the proposed sale of the Debtor's Assets. Section 363 of the Bankruptcy Code, which authorizes a debtor to use or sell assets of the estate other than in the ordinary course of business, free and clear of liens, claims and encumbrances, provides, in relevant part, as follows:

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .

See 11 U.S.C. § 363(b)(1); see also Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.").

25.         The decision to sell assets outside the ordinary course of business is based upon the sound business judgment of the debtor. See, e.g., In re Chateaugay Corp., 973

---

[4] The Purchaser shall be deemed a qualified bidder.

F.2d 141 (2d Cir. 1992); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 772 F.2d 1063, 1071 (2d Cir. 1983); In re Adelphia Commc'ns Corp., No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). See also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993), quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).

26.        In the circumstances of valid business justification, applicable principles of law attach to a debtor's decision a strong presumption "that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. at 656. Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor in possession has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. In re Betty Owens Sch., 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997); accord In re Delaware and Hudson Ry. Co., 124 B.R. 169, 166 (D. Del. 1991); In re Decora Indus., Inc., Case No. 00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

27.        Ample business justification exists in this case to approve the proposed Bidding Procedures and any sale effectuated in accordance therewith. The Debtor has considered all alternatives, with the assistance of its advisors, and determined that a sale of the Assets is in the best interests of its estate and creditors. The Lender is unwilling to continue to

fund the Debtor's operations as they currently exist and the Debtor has not located any other viable sources of funding sufficient to replace Wells Fargo to enable it to reorganize its business or continue as a going concern. Furthermore, the Bidding Procedures proposed herein will ensure that the Debtor receives the maximum value for its Assets. In light of the Debtor's liquidity constraints, the Debtor believes that the Sale must be completed in accordance with the expedited time frame described herein to preserve and maximize the value of the Debtor's Assets before in order to avoid significant additional decline.

## II.    Sale of Assets Free and Clear of Liens, Claims, and Encumbrances

28.           In the interest of attracting the best offers, the sale of the Assets should be free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims and encumbrances attaching to the proceeds of the sale. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

- applicable nonbankruptcy law permits sale of such property free and clear of such interest;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

- such interest is in bona fide dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1) – (5).

29.     With respect to any party asserting a lien, claim, or encumbrance against the Assets, the Debtor believes that they will be able to satisfy one or more of the conditions set forth in section 363(f).

**III.     The Successful Offeror Should be Afforded All Protections
Under Section 363(m) as a Good Faith Purchaser**

30.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 3 63(m). Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" In re Chateaugay Corp., 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. 1993) (quoting In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 at 147); see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

31.     The selection of the Successful Bidder will be the product of arm's-length, good-faith negotiations in an open and competitive process. The Debtor intends to request

at the Sale Approval Hearing a finding that the Successful Bidder is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## IV.    The Bidding Procedures are Reasonable and Appropriate

32.         The Debtor believes that the Bidding Procedures will ensure that the bidding process with respect to the Auction is fair and reasonable and will yield the maximum value for its estate and creditors.

33.         In addition, the Bidding Procedures set deadlines for conducting an Auction and holding a hearing with respect to the sale proposed herein. As set forth above, the Debtors presently faces a severe liquidity crisis. The Debtor has managed to obtain sufficient liquidity to conduct the sale process proposed herein. However, the Debtor does not have sufficient liquidity to operate beyond the expedited dates being requested. Thus, the Debtor believes that it must be permitted to conduct the sale process in the manner and on the timetable set forth herein and in the Bidding Procedures.

34.         Accordingly, the Debtor believes the Court should approve the Bidding Procedures, including the dates established thereby for the Auction and the Sale Approval Hearing.[5]

## V.    Sale of the Assets Does Not Require the Appointment of
## Consumer Privacy Ombudsman

35.         Under section 363 (b)(1), a debtor may sell or lease its customer list so long as it complies with the debtor's privacy policy. See 11 U.S.C. § 363(b)(1)(A). If a sale is inconsistent with the debtor's privacy policy, section 332 governs the appointment of a consumer

---

[5] The attached Sale Guidelines may be modified based upon bids received. To the extent the Sale Guidelines are modified, the Debtor will file such modifications with the Court as soon as practicable in advance of the Sale Approval Hearing.

privacy ombudsman. 11 U.S.C. § 332(b)(1). Here, the Debtor is <u>not</u> selling any customer list, so an appointment of a Consumer Privacy Ombudsman is not necessary.

36.     Should the Debtor sell any customer list as a result of the Auction, the Debtor will ensure that the sale is consistent with the Debtor's current privacy policy. Therefore, the appointment of a consumer privacy ombudsman is unnecessary at this time. Should the Debtor propose to sell any customer list it may have other than in compliance with its privacy policy, it will promptly notify the Court and seek the appointment of a consumer ombudsman.

## V.     **The Break-Up Fee Provision of the APA is Appropriate**

37.     Historically, bankruptcy courts have approved bidding incentives, including break-up fees awarded to an initial bidder or "stalking horse," in the event of a successful overbid based on the business judgment of the debtor.  <u>See, e.g.</u>, <u>In re 995 Fifth Ave. Assocs., L.P.</u>, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking"); <u>In re Integrated Resources, Inc.</u>, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (noting that "the business judgment of the Debtor is the standard applied under the law in this district" and applying the standard to a break-up fee).  Accordingly, the Debtor submits that the proposed Bid Procedures, including the break-up fee, are an exercise of its sound business judgment.  The Purchaser has requested the approval at the Bidding Procedures Hearing of a break-up fee in the amount of $200,000.  Such amount represents less than 4% of the total purchase price for the Assets and is reasonable under the circumstances. Without these procedures, the Debtor may be unable to maximize the value it can receive for the Assets.

**VI.     The Court Should Also (i) Authorize the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Identified in the Schedules to the APA, (ii) Fix a Deadline to Object to the Assumption and Assignment of Executory Contracts and Unexpired Leases and (ii) Fix the Cure Amounts With Respect Thereto**

38.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts subject to the approval of the Court:

> (a)  Except as provided in . . . subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

*See* 11 U.S.C. §§ 365(a), (b)(1), (f)(2).  Accordingly, section 365 of the Bankruptcy Code authorizes the assumption and assignment of real property leases, provided that the defaults under such leases are cured and adequate assurance of future performance is provided. Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); see also NLRB v. Bildisco and Bildisco, 465 U.S. 513, 523 (1984); City of Covington v. Covington Landing L.P., 71 F.3d 1221, 1226 (6th Cir. 1995); In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); In re Terrell, 892 F.2d 469, 471 (6th Cir. 1989); Sharon Steel Corp. v. Nat'l Fuel Gas Dist., 872 F.2d 36, 39-40 (3d Cir. 1989); In re Riodizio, Inc., 204 B.R. 417, 424-25 (Bankr. S.D.N.Y. 1997).

Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. See Phar-Mor, Inc. v. Strouss Bldg., 204 B.R. 948, 951 -52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor . . . . Courts should generally defer to a debtor's decision whether to reject an executory contract."); Riodizio, 204 B.R. at 424 ("[a] court will ordinarily defer to the business judgment of the debtor's management"). The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. See Allied Tech., Inc. v. R. R. Bruneman & Sons, Inc. In re Allied Tech.), 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982).

    39.   Here, these standards are met. The proposed assumption and assignment is warranted because, as described above, as it is required by the APA, which (a) embodies the best offer received for substantially all of the Debtor's assets and (b) enables the Debtor to maximize the value of its estate. Also, the proposed assumption and assignment provides the landlord with a viable tenant that can continue to operate the retail store and generate revenue to satisfy the rental obligation pursuant to the terms of the assumed lease . It is well settled that the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but that a contract counterparty is not required to receive an absolute guarantee of future performance. See, e.g., In re Glycogensys, Inc., 352 B.R. 568, 578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial condition of the assignee and the likelihood that the non-debtor party will receive the benefit of its bargain from the assignee"); Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (adequate assurance of future performance does not mean absolute

assurance that debtor will thrive and pay rent); In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (same).

40.     In connection with the assumption and assignment of executory contracts and unexpired leases pursuant to the APA, the Debtor believes it is necessary to establish a process by which the Debtor, the Purchaser and landlords and other parties to the Debtor's non-residential real property leases and other contract can rely with respect to the executor contracts which may be assumed and assigned pursuant to the APA and also establish the cure obligations, if any, to be paid in accordance with section 365 of the Bankruptcy Code and for the parties with respect to such assumed contracts and leases may assert any objection they may have to the assumption and assignment of same.  The Debtor proposes that no later than **January 27, 2010**, the Debtor will file a schedule of such cure obligations (the "Cure Schedule") with the Court and serve such schedule by first class mail on the parties to executory contracts and unexpired leases that may be assumed and assigned. The Debtor further proposes that any objections to the assumption and assignment of any executory contract or unexpired lease identified on the Cure Schedule, must be in writing, filed with the Court, and be actually received on or before **February 10, 2010** at noon on counsel to the Debtor, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP 1065 Avenue of the America, New York, New York 10018,  Attn: Henry Swergold Esq. or Clifford Katz Esq., and counsel to the Creditors' Committee, Kelly Drye & Warren LLP 101 Park Avenue New York, New York  10178, Attn: Robert Lehane, Esq.

41.     If no objections are received, then the cure amounts set forth in the Cure Schedule shall be binding upon the non-debtor parties to the unexpired leases or executory contracts for all purposes in this chapter 11 case and will constitute a final determination of

total cure amounts required to be paid by the Debtor in connection with the assignment to the winning bidder(s). In addition, each non-debtor party to such unexpired lease or executory contract shall be forever barred from objecting to the cure information set forth in the Cure Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the unexpired leases or executory contracts.

42. If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Debtor will request that the Court establish a date to hear such objection and, pending such hearing, the Debtor will pay the undisputed portion, if any, of the cure amount as set forth on the Cure Schedule from the sale proceeds. The pendency of a dispute relating to cure amounts will not prevent or delay the closing on any sale of assets, including the assumption and assignment of executory contracts and unexpired leases necessary to effectuate such closing.

43. The Debtor requests that any party failing to object to the proposed transactions be deemed to consent to the treatment of its executory contract and/or unexpired lease under section 365 of the Bankruptcy Code and this sale motion. See *Hargrave v. Twp. Of Pemberton* (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten* (In re Gabeel), 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). Moreover, the Debtor requests that each such party be deemed to consent to the assumption and assignment of its executory contract and/or unexpired lease notwithstanding any anti-alienation provision or other restriction on assignment. *See,* 11 U.S.C. §§ 365(c)(1)(A), (e)(2)(A), and (f).

**VII.    The Court Should Waive or Reduce the Periods Required
        By Rule 6004(h) of the Federal Rules of Bankruptcy Procedure**

44.        Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after entry of the order. See Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

45.        As described above, the Debtor believes that, absent a prompt sale, the value of its assets will rapidly decline because the Debtor lacks sufficient funding to continue operations. Consequently, any order approving the sale should be effective immediately by providing that the 10-day stay under Bankruptcy Rules 6004(h).

**NOTICE**

46.        Notice of this Motion has been provided to the Sale Notice Parties. The Debtor submits that no other or further notice need be provided.

**NO PRIOR REQUEST**

47.        No previous request for the relief sought herein has been made by the Debtor to this or any other court.

**WHEREFORE,** the Debtor respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: January 18, 2010

**PLATZER, SWERGOLD, KARLIN, LEVINE, GOLDBERG & JASLOW, LLP**
Counsel for the Debtor and Debtor in Possession

By: /s/ Clifford Katz
  Henry Swergold, Esq.
  Clifford Katz, Esq

1065 Avenue of the Americas
New York, New York 10018 Telephone:
(212) 593-3000
Facsimile: (212) 593-0353