KATTEN MUCHIN ROSENMAN LLP
Thomas J. Leanse
Dustin P. Branch
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

   -and-

Merritt A. Pardini
575 Madison Ave
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for The Forbes Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
: 
In re:  :  Chapter 11
: 
**BACHRACH ACQUISITION, LLC,**  :  Case No. 09-12918 (SMB)
: 
           Debtor.  :  (Jointly Administered)
: 
------------------------------------------------------- x

**LIMITED OBJECTION OF THE FORBES COMPANY TO THE DEBTOR'S APPLICATION PURSUANT TO SECTIONS 105(A), 363, AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004, AND 6006 FOR (I) ENTRY OF AN ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF ASSETS, (B) APPROVING CERTAIN BID PROTECTIONS, (C) SCHEDULING AN AUCTION AND SALE HEARING, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER AUTHORIZING AND APPROVING (A) THE DEBTOR'S ENTRY INTO A CERTAIN ASSET PURCHASE AGREEMENT, (B) THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND OTHER INTEREST, AND (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN <u>EXECUTORY CONTRACTS AND LEASES</u>**

      The Forbes Company (the "<u>Landlord</u>") hereby files this limited objection to the Debtor's

Application Pursuant To Sections 105(a), 363, And 365 Of The Bankruptcy Code And

Bankruptcy Rules 2002, 6004, And 6006 For (I) Entry Of An Order (A) Establishing Bidding

Procedures For The Sale Of Assets, (B) Approving Certain Bid Protections, (C) Scheduling An

Auction And Sale Hearing, And (D) Approving The Form And Manner Of Notice Thereof; And (II) An Order Authorizing And Approving (A) The Debtor's Entry Into A Certain Asset Purchase Agreement, (B) The Sale Of Assets Free And Clear Of Liens And Other Interest, And (C) Assumption And Assignment Of Certain Executory Contracts And Leases (the "Sale Motion"),[1] and respectfully represents as follows:

## I. INTRODUCTION

The Debtor's expedited auction process, followed by an almost immediate hearing to approve the outcome of such auction, jeopardizes the protections provided to Landlord through the Lease (as defined below) and the Bankruptcy Code. While the Landlord appreciates the Debtor's efforts to maximize estate value, such efforts must not deny Landlord the protections the Bankruptcy Code or abolish due process principles. Any sale of non-residential real property leases must not compromise the rights of Landlord and Debtor's neighboring tenants, and must satisfy all the requirements of Bankruptcy Code, including the requirements of 11 U.S.C. § 365.[2]

## II. BACKGROUND FACTS

1. Bachrach Acquisition, LLC (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on May 6, 2009. The Debtor has continued to operate its businesses and manage its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108.

2. The Debtor leases retail space (the "Premises") from the Landlord where it operates its retail locations as a tenant pursuant to unexpired leases of nonresidential real property (the "Lease") at the following shopping center location (the "Center"):

| **The Forbes Company** | | |
|---|---|---|
| Somerset Collection | Store No. 64 | Troy, MI |

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Sale Motion and related documents.

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

3. The Lease is a "lease of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990).

4. On January 20, 2010, the Debtor filed the Sale Motion. The Sale Motion seeks to approve bidding procedures to approve the sale to the Purchaser, or another successful bidder(s) after conducting the Auction.[3]

## III. ARGUMENT

### A. The proposed auction timetable and sale approval denies Landlord due process.

5. The timetable proposed by the Debtor does not provide adequate time for the Landlord to make an informed decision as to the ability of the Purchaser, or any other successful bidder, to perform under the Lease (much less to file any meaningful objection). The Sale Motion proposes for the following schedule:

- February 18, 2010 – Bid deadline.
- February 18, 2010 – Deadline to object to sale.
- February 22, 2010 – Auction.
- February 23, 2010 – Proposed Sale Hearing.

6. This proposed schedule is unduly burdensome to Landlord, unnecessarily short, inconsistent with Section 365, and denies Landlord due process. Fundamental concepts of due process require that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). *See also* Sullivan v. Barnett, 139 F.3d 158, 171 (3rd Cir. 1998) (due process requires notice and a meaningful opportunity to be heard). The schedule proposed by the Debtor does not preserve these concepts of due process.

7. Although the provision of adequate assurance information is referenced in the Bid Procedures, the Sale Motion does not provide any mechanism for the Landlord to receive

---

[3] Although the statutory time to assume or reject the Lease under Section 365(d)(4) has expired, the Landlord has provided written consent to the Debtor to extend the time to assume or reject the lease until the earlier of (a) February 28, 2010, (b) the entry of an order approving the sale of the debtor's assets, or (c) the confirmation of a plan of reorganization. As part of its written consent, the Landlord has specifically preserved all of its rights under the Lease, as well as to object to any eventual proposed assignee.

adequate assurance information for the Purchaser, or any successful bidder prior to the Sale Hearing. With respect to the Purchaser, there is no reason that the Debtor cannot immediately provide Landlord with adequate assurance of future performance information. To the extent that another party is the successful bidder at the Auction, however, any hearing on the Debtor's proposed timeline should only serve as a status conference to set a schedule for a further hearing to assume and assign leases after a reasonable opportunity for Landlord to review (and object, if necessary) adequate assurance of future performance information required by Section 365.

8. While the Landlord appreciates that there is a certain need for expediency, such needs do not have to come at the expense of the Landlord. At present, the Debtor has not provided any information to satisfy the general requirements of Section 365(b), or the heightened shopping center requirements of Section 365(b)(3)(A) – (D). Without adequate assurance information that satisfies the standards of Section 365, the Landlord will have no choice but to file a blanket and general objection seeking to continue any sale hearing so that it can receive information that complies with the requirements if the Bankruptcy Code. Moreover, by placing the bid deadline and sale objection deadline on the same day, the Landlord will not know the identity of the successful bidder at the time that their objection must be filed, again placing it in the position of having to file a blanket objection to protect its rights.

9. In order to satisfy the adequate assurance of future performance burden as more fully discussed below, the Debtor and the proposed assignee will need to provide Landlord, at a minimum, the following information:

(i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store;
(ii) the potential assignee's intended use for the space;
(iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto;
(iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projection for the Lease subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Lease;
(v) all documents and other evidence of the potential assignee's retail experience and experience operating in-line stores in a shopping center; and

(vi) a contact person for the proposed assignee that Landlord may directly contact in connection with the adequate assurance of future performance.

10. The items set forth above constitute a non-exclusive list of the minimum information the Landlord will need to assess any potential assignee. The Debtor cannot carry its burden under Section 365 without providing this information, and without receipt of such information, the Landlord cannot meaningfully assess the bona fides of any proposed assignee. Landlord reserves the right to request further information that it deems necessary to make an informed decision as to the ability of any assignee to satisfy the requirements of Section 365.

11. Once the Landlord receives adequate assurance information, it needs sufficient time to assess the proposed assignee's ability to satisfy Section 365(b). The Court should require that the Landlord receives at least five (5) business days from the receipt of adequate assurance of future performance information to assess a proposed assignee and object, if necessary, prior to any sale hearing. To do otherwise, deprives the Landlord of due process, and the Court should not deny the Landlord the statutory benefits to which it is entitled under Section 365.

**B.     The Debtor must provide adequate assurance of future performance information.**

12. The Debtor may not assume and assign the Lease unless there is adequate assurance of future performance under the Lease. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The Debtor bears the ultimate burden of persuasion as to issues under 11 U.S.C. § 365. *See* In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also* Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985).

13. Courts require a specific factual showing through competent evidence to determine whether an adequate assurance of future performance has been provided. *See e.g.*, Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented); In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986) (court granted motion to assume and assign based on assignee's capital contribution, personal financial resources, and expressed willingness to devote sufficient funding which gave new restaurant a strong likelihood of succeeding, coupled with assignee's experience as an owner/operator of a successful

restaurant and his family's planned involvement in the day-to-day management). Without this type of information, the Landlord is denied its statutory right to conduct a meaningful analysis of any proposed assignee.

14. The Court should require the Debtor to provide Landlord with the adequate assurance of future performance information for all bidders as required by the Bankruptcy Code, as well as adequate time to analyze such information, as set forth above. In order to preserve the Landlord's due process rights, all information and evidence upon which the Debtor and any proposed assignee intends to rely on to establish adequate assurance of future performance under Section 365 (e.g., financials, business plans, etc.) should be delivered to the Landlord no later than five (5) business days prior to any objection deadline.[4]

**C.    The Landlord is entitled to heightened adequate assurance under Section 365(b)(3).**

15. In this case, the Lease is a shopping center lease and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Lease under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). The heightened adequate assurance requirements that Debtor must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

---

[4] If the Landlord does not have sufficient information (or time) to make a determination as to a proposed assignee, or if the proposed assignee is unacceptable, the Landlord will need to object to the proposed sale and prepare for a contested evidentiary hearing. In preparation of such evidentiary hearing, the Landlord will need to conduct expedited discovery, arrange for expert testimony, and file supplemental objections based upon the information gleaned from whatever information is actually produced. This process cannot be accomplished on Debtor's proposed schedule. The proposed schedule serves only to limit the Landlord's ability to fully assess any successful bidder, or to contest the assumption and assignment of the Lease in a prepared and informed manner.

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

16. This adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). <u>Sun TV and Appliances, Inc.</u>, 234 B.R. at 370. And, in connection with the heightened adequate assurance requirement for shopping center leases, courts do require a specific factual showing through competent evidence to determine whether the Debtor has provided adequate assurance of future performance. <u>Matter of Haute Cuisine, Inc.</u>, 58 B.R. at 394.

17. A proposed assignee may take the form of a newly formed entity with no financial or operating history. At this time, the eventual assignee's structure, capitalization, principals or experience in the industry is unknown. While it may be that the eventual assignee is backed by one or more other entities with industry experience and/or financing, the Landlord will require such assignee to enter into some type of credit enhancement, such as: (i) a guaranty of future performance; (ii) a letter or credit; or (iii) a cash security deposit. Landlord requires that an existing entity with acceptable financing guaranty the performance of any newly-formed company. In addition, pursuant to Section 365(l), the Landlord may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Lease in the event that the assignee fails to perform on a going-forward basis. This is a reasonable condition of demonstrating adequate assurance of future performance where the Debtor is seeking approval of an assignee with no operating history.

18. The Landlord objects to any attempt to approve an assignment of the Lease at the proposed sale hearing. Unless the Landlord consents, to the extent that any hearing goes forward under the schedule proposed by the Debtor, it should serve only as a status conference to set expedited discovery, a briefing schedule, and a further evidentiary hearing for any landlord that contests the proposed assumption and assignment of its leases.

**D.     Any assumption and assignment must comply with the terms of the Lease.**

19.     Through the BAPCPA[5] amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored.  Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

20.     The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions.  Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to.  Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy.  It is my understanding that some bankruptcy judges have not followed this mandate.  Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

21.     As set forth above, bankruptcy courts must strictly enforce the use and other provisions in the Lease.  This intent is echoed by comments from the House of Representatives, and the legislative history leaves no doubt that such provisions must be strictly enforced:

> Section 404(b) amends § 365(f)(1) to assure that § 365(f) does not override any part of § 365(b).  Thus, § 404(b) makes a trustee's [debtor-in-possession's] authority to assign an executory contract or unexpired lease subject not only to § 365(c), but also to § 365(b), which is given full effect.  <u>Therefore, for example, assumption or assignment of a lease of real property in a shopping center must be subject to the provisions of the lease, such as use clauses</u>. (Emphasis added)

---

[5] On October 17, 2005, the Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (the "<u>BAPCPA</u>") went into effect, clarifying, *inter alia*, the protections that Landlord is entitled to under 11 U.S.C. § 365.

H.R. Rep. No. 109-31, pt. 1, at 87, reprinted in 2005 U.S. Code Cong. & Admin. News 153.

22. The BAPCPA clarified Section 365 to reflect the Congressional intent that Section 365(f)(1) not be used by debtors to avoid lease provisions. The language of Section 365(f), and any such ability to assume and assign the Lease, is subject to the protections provided by Section 365(b)(1) and (3). Therefore, any assignment must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance, etc.

23. The revisions to Section 365 make it clear that the Debtor cannot use Section 365(f) to render lease provisions unenforceable. While such provisions may indirectly limit the assignment of the Lease, Section 365(b) specifically protects these provisions.

24. Provisions governing use, radius and the permitted conduct upon the Premises are not anti-assignment provisions. They are negotiated provisions that legitimately seek to preserve the Landlord's control over shopping center environments. Section 365(b)(3) no longer permits even insubstantial breaches of provisions such as use, radius, location or exclusivity. These critical lease terms are enforceable under Section 365(b), and this Court should deny any attempted assignment that fails to comply with such provisions.

**E.  Any sale must not be free and clear of obligations to pay all charges due under the Lease, including unbilled year-end adjustments and reconciliations.**

25. The Sale Motion seeks authority for the sale the leases free and clear of liens, claims and encumbrances. *See* Sale Motion at ¶¶ 28 – 29. The Landlord objects to any sale free and clear of the Debtor's obligations to satisfy unbilled reconciliations and adjustments that have accrued under the Lease prior to the assignment of the Lease, but which have not yet been billed. The Debtor continues to be responsible for all such unbilled charges as they come due under the Lease, and the Debtor or assignee must continue to satisfy all charges due under the Lease, including charges which have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Lease cannot cut off the Landlord's right to recover unbilled charges that have accrued, or are accruing, under the Lease.

**F.    The proposed waiver of Federal Rule of Bankruptcy Procedure 6004(h) is improper.**

26.    Unless a consensual deal exists, the Landlord objects to the waiver of requirements of Federal Rule of Bankruptcy Procedure ("Rule") 6004(h). In light of the lack of information that Landlord has with respect to any potential sale of the Lease, this request is especially inappropriate. Any order approving the Sale Motion, therefore, should not include a prospective waiver of Rule 6004(h). Subsection (h) was added to Rule 6004, specifically to *protect* the rights of the objecting parties, and thus eliminate the "rush to the courthouse" to obtain stay orders by those parties adversely affected by entry of orders under Sections 363 or 365. Moreover, such an order in inappropriate in connection with bid procedures. Landlord should not have its appellate rights compromised by an advance waiver of these protections, particularly since the Debtor has failed to establish any cause for such a waiver, and where the Debtor proposes to give Landlord such a negligible amount of time between learning the identity of any proposed assignee and the hearing to approve any proposed sale.

**G.    Reservation of rights to object to form of documents and to raise further objections.**

27.    In light of the objections raised above, the Landlord reserves all rights to: (i) raise additional objections at this, or any further, hearing; (ii) raise all objections to an assignment of Lease to Purchaser or any other successful bidder on any grounds, including objections based upon adequate assurance of future performance; (iii) object to the form of any asset purchase agreement, sale order, or any other document when filed by the Debtor; and (iv) require any proposed assumption and assignment of the Lease to comply with all lease terms.

28.    To the extent consistent with the relief requested herein, Landlord joins in the oppositions filed by other landlords.

**IV.    CONCLUSION**

Under the procedures as proposed, the Court should not entertain any request to assume and assign the Lease at the proposed sale hearing because doing so denies the Landlord critical protections afforded by concepts of due process and the Bankruptcy Code. Any order approving the bidding procedures must require that the Debtor provides Landlord with adequate assurance

of future performance information for Purchaser and any other proposed assignee, as well as adequate time for the Landlord to assess such information ,prior to any objection deadline. Moreover, the Court should not enter any order approving the bidding procedures unless it contains the modifications raised by this Objection, and grants such further relief as the Court deems proper.

Dated: January 27, 2010

**KATTEN MUCHIN ROSENMAN LLP**
Attorneys for The Forbes Company

By: /s/ Dustin P. Branch

Thomas J. Leanse
Dustin P. Branch
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Phone: (310) 788-4400
FAX: (310) 788-4471

Merritt A. Pardini
575 Madison Ave
New York, New York 10022
Phone: (212) 940-8800
FAX: (212) 940-8776