UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                                    CHAPTER 11

BACHRACH ACQUISITION, LLC,                                Case No. 09-12918 (SMB)

                 Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 (i) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (ii) ASSUMING AND ASSIGNING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED REAL PROPERTY LEASES, AND (iii) RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing the Debtor's sale (the "Sale") of all or substantially all of the Debtor's assets as set forth in the APA (the "Assets"), pursuant to and as described in the Asset Purchase APA, (the "APA") dated as of January 11, 2010, as amended together with the schedules thereto, copies of which are attached hereto as Exhibit A (and as has been or may be amended, the "APA"), among the Debtor, as Seller ("Seller") and B&B Bachrach, LLC, a California limited liability company, as Purchaser ("Purchaser"), free and clear of all liens, claims and encumbrances other than with respect to Assumed Liabilities (as hereinafter defined, "Interests"), with such Interests to transfer, affix and attach to the proceeds of the Sale, all as more fully set forth herein; and (ii) setting the related auction and hearing dates; and the Court having entered an Order, dated February 1, 2010 (the "Bidding Procedures

Order"), and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having, on February 23, 2010, held a hearing on the Motion (the "Sale Hearing") and found and determined from the record of evidence having been made before this Court, both oral and written and from all other pleadings and documents heretofore filed in this case that the relief sought in the Motion is in the best interests of the Debtor, its estate and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

**FOUND AND DETERMINED THAT:**

   A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

   B. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

   C. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed thereto in the APA.

   D. This Court has jurisdiction over the Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

E. The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Rules 2002, 6004, and 9014 of the Bankruptcy Rules.

F. As evidenced by the affidavits of service previously filed with the Court (i) proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, the Bidding Procedures Order and the APA, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Sale shall be required.

G. **SMB 3/2/10** ~~Each of the Debtor and Purchaser has full corporate power and authority to execute the APA and all other documents contemplated thereby~~.

H. Emergent circumstances and sound business reasons exist for Debtor's Sale of the Assets pursuant to the APA. Entry into the APA and consummation of the transactions contemplated thereby constitute the exercise by the Debtor's of sound business judgment and such acts are in the best interests of the Debtor, its estate and creditors. The Court finds that the Debtor has articulated good and sufficient business reasons justifying the Sale of the Assets pursuant to sections 105 and 363 of the Bankruptcy Code. Such business reasons include, but are not limited to, the facts that (a) there is substantial risk of deterioration of the value of the Assets if the Sale is not consummated quickly; and (b) the APA constitutes the highest or best offer for the Assets.

I. The Auction authorized by Order of this Court was cancelled since no other qualified bids were submitted. The APA entered into and the transactions contemplated by the APA were negotiated and have been and are undertaken by Seller and Purchaser and the APA is an arm's length transaction, without collusion or fraud, and in good faith. **SMB 3/2/10** ~~within the meaning of section 363(m) of the Bankruptcy Code. The Purchaser was and is a Qualified Bidder. As a result of the foregoing, the Purchaser is entitled to and hereby receives all of the protections of section 363(m) of the Bankruptcy Code~~.

J. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

K. The consideration provided by the Purchaser for the Assets is the highest and best offer received by the Debtor and is fair and reasonable.

L. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

M. The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of all liens, claims, encumbrances, obligations, liabilities, demands, guarantees, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, (other than with respect to Assumed Liabilities) whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of this case **SMB 3/2/10 and prior to the closing** pursuant to chapter 11 of the Bankruptcy Code, including but not limited to claims otherwise arising under doctrines of successor liability (collectively, "Interests" ).

N. The Debtor may sell the Assets free and clear of all Interests of any kind or nature whatsoever (other than with respect to Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

O. Pursuant to the Final Order Authorizing Debtor-In-Possession To Incur Post-Petition Secured Indebtedness, To Grant Security Interest And Priority Claims Pursuant To Sections 364(C) And 364(D) Of The Bankruptcy Code Modifying Automatic Stay And Approving Agreements With Wells Fargo Bank, National Association Acting Through Its Wells Fargo Business Credit Operating Division, entered on June 23, 2009 (the "DIP Financing Order"), Wells Fargo holds a first lien upon substantially all of the Debtor's pre and post petition assets, including the assets to be conveyed under the APA.

P. The APA envisions a cash payment to Wells Fargo in the amount of three million dollars ($3,000,000) (the "Cash Consideration") to be paid at closing and an additional payment, not to exceed one hundred and sixty five thousand ($165,000) dollars.

Q. The APA provides for (i) a note in the amount of $500,000 for the benefit of Professionals in this bankruptcy case (the "Professionals Note"); (ii) a note in the amount of $450,000 for the benefit of the creditors of the Debtor (the "Creditors' Note"), and (iii) a note in the amount of $200,000 for the benefit of Weatherproof Garment Company ("Weatherproof") (the "Weatherproof Note").

R. Prior to the deadline set in the Bidding Procedures Order for the objection to cure costs listed in the Schedules to the APA, numerous landlords (collectively, the "Landlords") filed objections to the proposed cure costs contained in the Schedules to the APA. Prior

to entry of this order, the Debtor and the Landlords reached stipulations regarding such cure costs (the "Landlord Stipulations").

S. On February 22, 2010, the Official Committee of Unsecured Creditors of the Debtor (the "Committee") filed an objection to the Sale. At the Sale Hearing, the Committee, the Debtor, Wells Fargo and certain insiders of the Debtor reached a settlement to resolve the Committee's objection as set forth in this Order.

**NOW IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted **SMB 3/2/10 to the extent set forth below.** ~~, as further described herein~~.

2. All objections and responses concerning the Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing and to the extent any such objection or response was not otherwise withdrawn, waived, or settled, they are, and all reservations of rights or relief requested therein are, overruled and denied.

3. The APA, and all of the terms and conditions thereof, is approved. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to perform their obligations under and comply with the terms of the APA, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the APA.

4. The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the

Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

5. Except as expressly permitted or otherwise specifically provided for in the APA or this Order pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be transferred to the Purchaser, and upon Closing shall be, free and clear of all Interests of any kind or nature whatsoever (other than with respect to Assumed Liabilities) with all such Interests of any kind or nature whatsoever to attach to the net proceeds of the Sale.

6. The transfer of the Assets to the Purchaser pursuant to the APA constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Assets free and clear of all Interests of any kind or nature whatsoever (other than with respect to Assumed Liabilities). If any Person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents evidencing Interests in the Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests which the Person or entity has with respect to the Assets or otherwise, then (a) the Debtor is authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the Person or entity with respect to the Assets and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests in the Assets of any kind or nature whatsoever.

7. Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

8. This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, the Creditors' Note, the Professionals' Note, the Weatherproof Note, and this Order.

9. **SMB 3/2/10** ~~The transactions contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale of the Assets to the Purchaser (including the assumption, assignment and sale of any of the contracts~~.

10. The Purchaser is a purchaser in good faith of the Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. **SMB 3/2/10** ~~The Purchaser has not engaged in any conduct that would cause or permit the sale to be avoided under Bankruptcy Code section 363(n)~~.

11. The Debtor is authorized and directed to assume and assign to the Purchaser the executory contracts and unexpired leases as identified on schedule 1.1(b) of the APA and subject to the payment of the cure costs by the Purchaser as may be set forth in written agreements between the landlords, the Purchaser and the Debtor and in the amounts set forth on Exhibit B hereto**,** the assignment of such contracts and leases pursuant to sections 363 and 365 of the Bankruptcy Code to the Purchaser is authorized and approved, and fully enforceable and binding on the lessors/landlords thereof. Upon payment of the cure costs by the Purchaser, the Debtor shall have no liability for any amounts arising under any of the contracts or leases assigned to the Purchaser pursuant to this Order.

12. The terms and provisions of the APA and this Order shall be binding in all respects

upon the parties, their heirs successors and assigns. The provisions of this Order and the terms and conditions of the APA, shall be binding upon, fully enforceable against and inure to the benefit of any trustee, responsible officer or other fiduciary appointed in the chapter 11 case or upon conversion of the Debtor's case, against a trustee appointed pursuant to chapter 7 of the Bankruptcy Code.

13. The Debtor and/or the Purchaser, as the case may be, is authorized and upon the closing of the APA, to pay over to Wells Fargo, the Cash Consideration, as partial satisfaction of the pre and post petition indebtedness owed to Wells Fargo by the Debtor. In the event the Cash Consideration is insufficient to reduce the Debtor's obligations owing to Wells Fargo to the amount of $3,500,000, the Purchaser shall effect payments to Wells Fargo of a portion of the Assumed Administrative Payables provided for under the APA up to the amounts as follows: (a) $65,000 on or before March 31, 2010 (b) $50,000 on or before April 30, 2010 and (c) $50,000 on or before May 31, 2010.

14. In conjunction with the closing of the APA an escrow fund (the "Wind Down Fund") shall be established to cover the professional fees and expenses for winding down the Debtor's case occurring after the closing of the APA. The Wind Down Fund shall be subject to a separate escrow agreement to be entered into by and among Wells Fargo, counsel to the Debtor, counsel to Committee and any other party providing funding for the Wind Down Fund. The Wind Down Fund shall be funded as follows: (a) $50,000 by Wells Fargo (b) $25,000 by Brian Lipman and (c) additional funds, if any, arising under paragraph 24 of this Order. If upon entry of final orders of the Bankruptcy Court reviewing and approving the fees and expenses of each of the Professional up to the Closing of the Sale (the "Approved Fees"), the aggregate amount of the Approved Fees is less than $500,000 in the aggregate (the difference between the Approved

Fees and $500,000 referred to as the "Professional Fee Equity") then the amount of the Wind Down Fund shall be reduced by the amount of the Professional Fee Equity and the escrow agent shall promptly return such amount as follows: (i) up to the first $50,000 to Wells Fargo, then (ii) up to the next $25,000 to Brian Lipman.

15. The terms of the Professionals Note, Weatherproof Note and the Creditors' Note, and the payment of such notes for the benefit of the Professionals, Weatherproof and the creditors of the Debtor's estate respectively, are hereby approved. Any and all payments received from the Purchaser with respect to the Professionals Note shall be held in escrow by Debtor's counsel pending further order of the Bankruptcy Court directing the release of such amounts or consent of the Professionals.

16. The Debtor's exclusive right to file a plan and disclosure statement and solicit approval thereof is hereby terminated as it applies to the Committee.

17. The Wind Down Fund is hereby approved and shall be used exclusively (i) to pay for the reasonable costs and expenses of the Committee and Debtor in winding down the Debtor's estate; (ii) the reasonable costs and expenses of the Debtor to the extent requested by counsel to the Committee or reasonably necessary in winding down the estate; and (iii) funding a liquidating trust or other similar entity established to administer the remaining assets of the Debtor's estate. Counsel for Wells Fargo shall hold the Wind Down Fund in escrow until this Court enters an order authorizing the distribution of the Wind Down Fund.

18. Pursuant to the APA and the amendments thereto, at Closing the Purchaser shall be deemed to have acquired the Avoidance Actions as set forth in the APA as amended. For the avoidance of doubt, the Purchaser is not acquiring any claims or causes of action other than the Avoidance Actions as defined in the APA.

19. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the APA.

20. To the extent any provisions of this Order conflict with the terms and conditions of the APA, the terms of this Order shall govern and control.

21. This Order and the APA shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtor and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if the case is converted from Chapter 11, and all creditors of the Debtor (whether known or unknown).

22. The provisions of this Order are non-severable and mutually dependent.

23. Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in this Chapter 11 case, or in any subsequent or converted cases of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

24. The Closing of the APA shall be as of 7 a.m. on March 1, 2010. Accordingly, all cash proceeds collected by the Debtor through the close of business on February 28, 2010 shall be deemed property of the Debtor's estate and shall be applied to reduce its obligations owing to Wells Fargo in accordance with the DIP Financing Order. To the extent, if at all, that the balance owing by the Debtor to Wells Fargo as of the Closing is less than $3,665,000 (after accounting for all reasonable interest, fees and costs owed by the Debtor in accordance with the DIP Financing Order, the "Final Balance Owing"), the difference between $3,665,000 and the Final Balance Owing shall be shared *pari passu* between Wells Fargo, as additional reduction of the obligations owing to it, and to increase the Wind Down Escrow. To the extent Wells Fargo

receives any cash proceeds for sales that are consummated after 7:00AM on March 1, 2010, Wells Fargo shall promptly forward said proceeds to the Purchaser at an account(s) as designated by the Purchaser.

25. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

26. The APA and any related documents may be modified, amended or supplemented, in a writing signed by both parties to the APA together with the written consent of Wells Fargo and counsel to the Creditors, and in accordance with the terms thereof, without further order of the Court or notice to the Court or others, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

27. Notwithstanding Bankruptcy Rules 6004, and 6006, this Order shall be effective and enforceable immediately upon entry.

Dated: New York, New York
       March 2, 2010

                         /s/ STUART M. BERNSTEIN
                      UNITED STATES BANKRUPTCY JUDGE

**Issued at 5:50 p.m.**